# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                           :

DOUGLAS MARLAND, COSETTE      :
RINAB, and ALEC CHAMBERS,       :     Civil Action No. 2:20-cv-04597 WB
                           :
               Plaintiffs,    :
                           :     **Oral Argument Requested**
          -against-        :
                           :
DONALD J. TRUMP, in his official    :
capacity as President of the United States;   :
WILBUR L. ROSS, JR., in his official    :
capacity as Secretary of Commerce; and   :
U.S. DEPARTMENT OF COMMERCE,   :
                           :
            Defendants.   :
                           :
                           :
                           :
                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    ARGUMENT ...................................................................................... 1

    A.    Plaintiffs' Claims Are Justiciable. ............................................. 1

    B.    Plaintiffs Are Likely to Prevail on Their First Amendment Claims. ..................... 2

        1.    Defendants' acts are subject to First Amendment scrutiny. ...................... 2

        2.    Defendants have failed to satisfy First Amendment scrutiny. ................... 5

    C.    Plaintiffs are Likely to Prevail on Their Due Process Claims. ............................. 6

    D.    Plaintiffs are Likely to Prevail on Their IEEPA Claims........................................ 7

    E.    The Remaining Factors Favor Nationwide Injunctive Relief Without a Bond. ....... 9

III.    CONCLUSION................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alaska Airlines, Inc. v. Civil Aeronautics Bd.*,
 545 F.2d 194 (D.C. Cir. 1976) ...................................................................................7

*Alexander v. United States*,
 509 U.S. 544 (1993) ....................................................................................................3

*Arcara v. Cloud Books, Inc.*,
 478 U.S. 697 (1986) ....................................................................................................3

*Ayers v. Pocono Mtn. Sch. Dist.*,
 710 F.3d 99 (3d Cir.) ................................................................................................10

*Bartnicki v. Vopper*,
 532 U.S. 514 (2001) ....................................................................................................4

*Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*,
 482 U.S. 569 (1987) ....................................................................................................4

*Berger v. City of Seattle*,
 569 F.3d 1029 (9th Cir. 2009) ....................................................................................6

*City of Cincinnati v. Discovery Network, Inc.*,
 507 U.S. 410 (1993) ....................................................................................................5

*City of Ladue v. Gilleo*,
 512 U.S. 43 (1994) ......................................................................................................6

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. FDIC*,
 132 F. Supp. 3d 98 (D.D.C. 2015) .............................................................................6

*Dames & Moore v. Regan*,
 453 U.S. 654 (1981) ....................................................................................................8

*Dart v. United States*,
 848 F.2d 217 (D.C. Cir. 1988) ...................................................................................8

*Defense Distrib. v. U.S. Dep't of State*,
 838 F.3d 451 (5th Cir. 2016) ...................................................................................10

*Franklin v. Massachusetts*,
 505 U.S. 788 (1992) ....................................................................................................8

*Hohe v. Casey*,
    868 F.2d 69 (3d Cir. 1989)..................................................................................................9

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010).......................................................................................................5, 9

*Hoxworth v. Blinder, Robinson & Co.*,
    903 F.2d 186 (3d Cir. 1990)...........................................................................................10

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    591 U.S. ___, 140 S. Ct. 2367 (2020)............................................................................10

*Milena Ship Mgmt. Co. v. Newcomb*,
    804 F. Supp. 846 (E.D. La. 1992).....................................................................................8

*Minneapolis Star and Tribune Co. v. Minnesota Commissioner of Revenue*,
    460 U.S. 575 (1983)..........................................................................................................3

*Mississippi v. Johnson*,
    71 U.S. 475 (1866)............................................................................................................8

*N.Y. Times v. United States*,
    403 U.S. 713 (1971)..........................................................................................................5

*Novak v. City of Parma*,
    932 F.2d421 (6th Cir. 2019) ............................................................................................3

*O'Bannon v. Town Ct. Nursing Ctr.*,
    447 U.S. 773 (1980)..........................................................................................................6

*Packingham v. North Carolina*,
    582 U.S. ___, 137 S. Ct. 1730 (2017)..............................................................................7

*Peachlum v. City of York, Pa.*,
    333 F.3d 429 (3d Cir. 2003).............................................................................................2

*Pennsylvania v. Trump*,
    351 F. Supp. 3d 791 (E.D. Pa.), *aff'd*, 930 F.3d 543 (3d Cir. 2019).......................10

*Ryan v. Trump*,
    No. 3:20-cv-05948-VC (N.D. Cal. Sept. 15, 2020) ........................................................2

*Smith v. Fed. Reserve Bank of N.Y.*,
    280 F. Supp. 2d 314 (S.D.N.Y. 2003).............................................................................8

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011)...................................................................................................2, 3, 4

*Temple Univ. v. White*,
   941 F.2d 201 (3d Cir. 1991) ............................................................................... 10

*U.S. v. Playboy Entm't Grp., Inc.*,
   529 U.S. 803 (2000) .............................................................................................. 6

*U.S. WeChat Users All. v. Trump*,
   No. 20-CV-05910-LB, 2020 WL 5592848 (N.D. Cal. Sept. 19, 2020) ........................ 1, 3, 5, 6

*United States v. Stevens*,
   559 U.S. 460 (2010) .............................................................................................. 2

*Veterans Peace Convoy, Inc. v. Schultz*,
   722 F. Supp. 1425 (S.D. Tex. 1988) ...................................................................... 8

*Virginia v. Hicks*,
   539 U.S. 113 (2003) .............................................................................................. 4

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) .............................................................................................. 5

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................................. 10

**Federal Statutes**

50 U.S.C. § 1702(b)(1) ............................................................................................. 8

50 U.S.C. § 1702(b)(3) ............................................................................................. 9

50 U.S.C. § 1702(c) ................................................................................................. 8

**Constitutional Provisions**

United States Constitution, Amend. I .............................................................. *passim*

**Other Authorities**

H.R. Rep. No. 95-459 (June 23, 1977) ...................................................................... 8

## I.   INTRODUCTION

Defendants admit the Executive Order and regulations will limit and shutter an entire forum for protected speech.  That means they must satisfy the First Amendment—and they do not Defendants claim they have only banned "transactions," causing "incidental," "downstream" effects on speech.  This theory elevates form over substance and ignores established law.  Where, as here, the government imposes a regulation that severely restricts speech, the First Amendment applies.  The Executive Order and regulations, supported by a flimsy record about "potential" or "possible" risks, are invalid—a conclusion a court reached last week in enjoining similar restrictions on the platform WeChat.  *U.S. WeChat Users All. v. Trump*, No. 20-CV-05910-LB, 2020 WL 5592848, at *10 (N.D. Cal. Sept. 19, 2020).  The government has also violated the Due Process Clause of the Fifth Amendment, and its acts are *ultra vires*.

As a result, Plaintiffs (and millions of others) are suffering and will continue to suffer constitutional injury—precisely the conditions in which courts relax Article III standards.  This harm is immediate and irreparable.  Defendants' actions have already chilled protected speech.  Further, effective September 27, Plaintiffs will lose access to tens of thousands of potential viewers and creators **every month**, an effect amplified by the looming threat to close TikTok altogether.  In contrast, the government offers no reason the status quo will harm it.

The Court should enjoin enforcement of the Executive Order and regulations—those that take effect September 27 **and** those that take effect November 12.

## II.   ARGUMENT

### A.   Plaintiffs' Claims Are Justiciable.

"Ripeness standards are most relaxed when the First Amendment claim is a facial overbreadth challenge" and "a facial First Amendment challenge may be deemed ripe even

during the pendency of an administrative proceeding." *Peachlum v. City of York, Pa.*, 333 F.3d 429, 438 (3d Cir. 2003).  In overbreadth challenges, "standing arises not because [plaintiff's] own rights of free expression are violated, but because of a judicial prediction or assumption that the [statute's] very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.*[1]  Further, where a law imposes a prior restraint, "the mere existence of such a law raises constitutional questions." *Id.* at 439.

The government ignores these principles and Plaintiffs' evidence of harm.  *See* Marland Decl. (Dkt. 7-2) ¶ 9 (describing "drop in business"); Supplemental Marland Decl. ¶ 2.  And its suggestion that the restrictions "might" not be enforced do not change the ripeness analysis:  The Constitution does not leave citizens "at the mercy of noblesse oblige." *United States v. Stevens*, 559 U.S. 460, 480 (2010); *Peachlum*, 333 F.3d at 439 ("A failure to enforce [a law] is not tantamount to permission.").  Plaintiffs' claims are justiciable.

**B.     Plaintiffs Are Likely to Prevail on Their First Amendment Claims.**

**1.     Defendants' acts are subject to First Amendment scrutiny.**

Rather than discuss the contours of the overbreadth and prior restraint doctrines, Defendants argue they have barred "transactions," triggering no First Amendment analysis. Opp. 12, 18.  The Court should reject this attempt to evade the Constitution.

*Sorrell v. IMS Health Inc*., 564 U.S. 552 (2011), is directly on point.  In *Sorrell*, the Supreme Court struck down a Vermont statute that restricted the sale, disclosure, and use of pharmacy records (*i.e*., "transactions") that reveal individual doctors' prescribing practices. Although Vermont adopted the statute not to suppress speech but to safeguard privacy and

---

[1] *Ryan v. Trump*, No. 3:20-cv-05948-VC (N.D. Cal. Sept. 15, 2020), Opp. 11, is distinguishable: It did not involve any First Amendment harms but rather the possible future injury of lost wages.

objectivity of prescription decisions, the Court held the law was subject to First Amendment

scrutiny. *Id.* at 570-71. The Court rejected the state's claim that "sales, transfer, and use of

prescriber-identifying information are conduct, not speech," and that the effect on speech was

"incidental." *Id.* at 566-67, 570. Similarly, in *Minneapolis Star and Tribune Co. v. Minnesota*

*Commissioner of Revenue*, 460 U.S. 575, 585 (1983), the Court struck down a tax on newsprint

and ink: The tax "place[d]… a burden on the interests protected by the First Amendment."

So too, here. That the Executive Order and regulations ban "transactions" does not make

the First Amendment nugatory. There are (at least) "serious questions going to the merits of

their First Amendment claim that the Secretary's prohibited transactions effectively eliminate the

plaintiffs' key platform for communication, slow or eliminate discourse, and are the equivalent

of censorship of speech or a prior restraint on it." *WeChat*, 2020 WL 5592848, at *10.

The government's primary case, *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 700 (1986),

Opp. 12-13, is inapposite. In *Arcara*, the Supreme Court upheld an order closing a bookstore

where solicitation of prostitution was taking place. *See id.* The Court held that the order was

permissible because it "b[ore] absolutely ***no connection*** to any expressive activity." *Id.* at 707

n.3 (emphasis added). But here, by prohibiting "transactions" on a platform whose sole purpose

is to facilitate communication, the Executive Order and regulations have "the inevitable effect of

singling out those engaged in expressive activity, as in *Minneapolis Star*," *id.* at 706-07, and

effect "a form of prior restraint," *Minneapolis Star and Tribune Co.*, 460 U.S. at 586 n.9.[2]

---

[2] The government claims the regulations are not a prior restraint under the narrow definition in *Alexander v. United States*, 509 U.S. 544, 550 (1993). Opp. 19. But "courts should not be overly formalistic in defining what counts" as a prior restraint. *Novak v. City of Parma*, 932 F.2d 421, 432-33 (6th Cir. 2019) (prior restraints may include informal threats).

Nor does *Virginia v. Hicks*, 539 U.S. 113 (2003), help Defendants. *Hicks* rejected a facial challenge to an "unquestionably valid trespass statute" used to convict the plaintiff of unlawfully entering a housing subdivision—not because he wanted to engage in First Amendment activity, but because he violated a notice barring him from the premises after he damaged property there. *Id.* at 115-16. Further, the defendant "failed to demonstrate that this notice would even be given to ***anyone*** engaged in constitutionally protected speech," *id.* at 122, meaning a facial challenge was improper, *id.* at 124. Here, Plaintiffs undisputedly engage in First Amendment conduct, as do millions of other Americans who use TikTok for speech.

The government relies on cases deciding whether regulated conduct has a sufficient expressive element to trigger First Amendment review. *See* Opp. 13, 17 (citing flag and draft card burning cases). These cases are irrelevant. Operating a forum that facilitates speech, far from "conduct," is an essential part of the speech itself. *See Sorrell,* 564 U.S. at 570 ("creation and dissemination of information are speech within the meaning of the First Amendment"); *Bartnicki v. Vopper*, 532 U.S. 514, 526-27 (2001) ("If . . . 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category, as distinct from the category of expressive conduct.").

Finally, the government claims that even if the Executive Order and regulations implicate the First Amendment, they are "time, place, or manner" restrictions subject to intermediate scrutiny. Although the government is wrong, it does not matter. *See Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 573-74 (1987) (where court held "resolution [was] facially unconstitutional under the First Amendment overbreadth doctrine," it "need not decide" whether the time, place, and manner standard applied).

**2.      Defendants have failed to satisfy First Amendment scrutiny.**

Defendants do not dispute the Executive Order and regulations fail to satisfy strict scrutiny, nor could they.  *See* Mot. 10.  Nor do their actions satisfy intermediate scrutiny, which requires that a restriction be narrowly tailored to serve a significant interest and allow alternative methods of communication.  *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989).[3]

First, the government has not established a significant interest, instead relying on speculation about "possible" or "potential" risks.  Defendants urge the Court not to "second-guess[]" their assessment, relying on *Holder v. Humanitarian Law Project*, 561 U.S. 1, 5 (2010).  Opp. at 15.  Even under *Humanitarian Law Project,* however, "concerns of national security and foreign relations do not warrant abdication of the judicial role" and courts "do not defer to the Government's reading of the First Amendment, even when such interests are at stake."  561 U.S. at 34; *see also N.Y. Times v. United States*, 403 U.S. 713 (1971).  Further, Plaintiffs do not claim Defendants must "conclusively link all the pieces in the puzzle," Opp. 15, but here, the government has provided ***no links*** at all, relying on the Executive Order's blanket conclusion that "[t]hese risks are real."  Opp. 15 & n.5.  Moreover, the government's interest is undermined by its continued delay of the regulations—another argument to which it offers no response.

Second, Defendants' actions do not represent a "reasonable fit" between their asserted interests and "the means . . . chosen to serve those interests."  *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 440 (1993) (citation omitted).  Thus, in *WeChat,* although "the government ha[d] established that China's activities raise significant national-security concerns," it had "put in scant little evidence that its effective ban of WeChat for all U.S. users addresses those concerns.  And …there are obvious alternatives to a complete ban, such as barring WeChat

_____

[3] Plaintiffs have not waived this argument, which responds to an argument in the Opposition.

from government devices."  2020 WL 5592848, at *10.  So too, here, Defendants cannot explain

why the order requiring divestiture of TikTok's assets is not a less restrictive way to address their

concerns.  This alternative is not "imaginable," Opp. 16, but has been adopted by the August 14

Executive Order.  *See U.S. v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000).  Similarly,

Defendants cannot explain why the risk of Chinese censorship of some content for some users

justifies suppressing ***all*** users' speech, or why prohibiting federal workers from using TikTok

would not address surveillance concerns.  *WeChat*, 2020 WL 5592848, at *10.  There is no fit

between the restrictions and asserted interest, much less a reasonable one.

Finally, the Executive Order and regulations do not leave open ample alternative

channels for communication.  "[A]n alternative is not ample if the speaker is not permitted to

reach the intended audience."  *Berger v. City of Seattle*, 569 F.3d 1029, 1049 (9th Cir. 2009) (*en

banc*).  Defendants claim other "modes of communication" exist, Opp. 16, but those alternatives

do not allow Plaintiffs to reach their audience.  Rinab Decl. ¶ 9; Marland Decl. ¶ 10; Chambers

Decl. ¶¶ 3-4.  *See also City of Ladue v. Gilleo,* 512 U.S. 43, 56 (1994) (near complete ban on

residential signs unconstitutional because government did not show "adequate substitutes exist

for the important medium of speech").

**C.    Plaintiffs are Likely to Prevail on Their Due Process Claims.**

Plaintiffs are also likely to prevail on their due process claims.

Defendants argue the Executive Order and regulations only indirectly affect Plaintiffs.

Opp. 20 (citing *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 789 (1980)).  But these

restrictions directly affect Plaintiffs, and even indirect effects can trigger due process

deprivations.  *O'Bannon*, 447 U.S. at 789 n.22; *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. FDIC*, 132

F. Supp. 3d 98, 122 (D.D.C. 2015) (payday lenders had due process claim where government action directed at banks was intended to end bank relationships with lenders).

Further, Plaintiffs have property and liberty interests at stake.  Although Defendants recognize state law permits conversion claims for stolen social media accounts, they argue, with no support, that this does not amount to a property interest.  Defendants also point to TikTok's right to disable specific content.  Opp. 20.  This is a non-sequitur: Merely because TikTok may remove content does not mean users have no property interest in their accounts.  Even so, Plaintiffs have liberty interests in the right to receive information and choose their occupation. Mot. 18-20.  Defendants claim Plaintiffs "cite no Third Circuit authority recognizing an interest," Opp. 20 n.7, but ignore the cases Plaintiffs do cite.  Mot. 18.  Defendants also claim Plaintiffs must identify "useful" areas of "knowledge" to which they have been deprived, Opp. 20 n.7, but Plaintiffs have done that.  *E.g.*, Rinab Decl. ¶ 10; *Packingham v. North Carolina*, 582 U.S. ___, 137 S. Ct. 1730, 1735-36 (2017) (social media hosts "a wide array of protected First Amendment activity on topics as diverse as human thought").  Further, Plaintiffs' right to work as TikTok influencers *is* their chosen profession, not "a specific job."  Opp. 20-21 n.7.  Plaintiffs cannot pursue this profession elsewhere.  Rinab Decl. ¶¶ 9; Marland Decl. ¶ 10; Chambers Decl. ¶ 3.

Finally, Defendants claim no process is due on "decisions of policy."  Opp. 21.  But the Executive Order and regulations do not declare legislative policies.  They target a single entity. *See, e.g.*, *Alaska Airlines, Inc. v. Civil Aeronautics Bd.,* 545 F.2d 194, 200 & n.11 (D.C. Cir. 1976) (where action targets particular "parties and their activities," it is not general policy).

### D.   Plaintiffs are Likely to Prevail on Their IEEPA Claims.

As Plaintiffs explained in their Motion, *ultra vires* claims do not require a statutory cause of action.  *See* Mot. 21 (citing cases).  Defendants ignore the cases Plaintiffs cite and rely on

irrelevant cases.  One case, for example, holds that the president is not an "agency" under the Administrative Procedure Act, but Plaintiffs do not assert an APA claim.  *Franklin v. Massachusetts*, 505 U.S. 788, 800-801 (1992) (cited at Opp. 23 n.8).  Another case, *Mississippi v. Johnson*, 71 U.S. 475 (1866), *id.*, concerns an effort to block the president from enforcing unconstitutional laws, ***not*** to stop him from exceeding his statutory authority.

Nor did Congress preclude judicial review of executive actions under IEEPA.  Opp. 22-23.  Section 1702(c) acknowledges such review, stating "[i]n any judicial review of a determination made under ***this section.***"  50 U.S.C. § 1702(c) (emphasis added.).  By stating "***this subsection*** does not confer or imply any right to judicial review," *id.* (emphasis added), the statute recognizes that "[w]hen an executive acts *ultra vires*, courts are normally available to reestablish the limits on his authority."  *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988).  Accordingly, numerous courts have decided challenges to the use of the President's IEEPA authority.  *See, e.g.*, *Dames & Moore v. Regan*, 453 U.S. 654 (1981); *Smith v. Fed. Reserve Bank of N.Y.*, 280 F. Supp. 2d 314, 320-21 (S.D.N.Y. 2003); *Milena Ship Mgmt. Co. v. Newcomb*, 804 F. Supp. 846, 850 & n.2 (E.D. La. 1992); *Veterans Peace Convoy, Inc. v. Schultz*, 722 F. Supp. 1425, 1432 (S.D. Tex. 1988).

Here, the President's acts impermissibly regulate "personal communications" and "informational materials."  The government claims Plaintiffs' communications on TikTok "involve a transfer of anything of value," but such an interpretation would justify unilateral regulation of virtually any personal communications, including, for example, Plaintiffs' consumption of educational videos about cooking and current events and comments about the Presidential election, *see* Rinab Decl. ¶ 10; Chambers Decl. ¶ 5.  This is not what Congress intended.  *See* H.R. Rep. No. 95-459, at 16 (June 23, 1977) (Section 1702(b)(1) is "designed both

to preserve First Amendment freedoms of expression, and to preclude policies that would totally isolate the people of the United States from the people of any other country.").

Finally, the government cannot rely on the exception to Section 1702(b)(3) allowing regulation of informational materials "prohibited by chapter 37 of Title 18." Opp. 24. This chapter, titled "Espionage and Censorship," has nothing to do with Plaintiffs' communications on TikTok, and the government does not even allege, let alone show, that Plaintiffs or any other TikTok users' "informational materials" are *prohibited* by these laws.

### E. The Remaining Factors Favor Nationwide Injunctive Relief Without a Bond.

The remaining injunctive relief factors favor Plaintiffs.

First, Plaintiffs have suffered irreparable harm. The Government quotes *Hohe v. Casey,* 868 F.2d 69, 72-73 (3d Cir. 1989) as saying "[t]he assertion of First Amendment rights does not automatically require a finding of irreparable injury." Opp. 25. But *Hohe* recognizes that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* In *Hohe,* the plaintiffs failed to show such an effect because the union fees they challenged were being held in an interest-bearing escrow account. *Id.* Here, in contrast, Plaintiffs' rights continue to be infringed absent any relief—both because of the threat that they will lose access to new viewers and creators, which reduces their right to speak and access to new content, and because of the threat that TikTok will be shuttered altogether.

Second, the balance of equities and public interest favor relief. "The Government's authority and expertise in [national security and foreign relations] do not automatically trump the Court's own obligation to secure the protection that the Constitution grants to individuals." *Humanitarian Law Project*, 561 U.S. at 34 (cited at Opp. 28). Further, "[n]either the Government nor the public generally can claim an interest in the enforcement of an

9

unconstitutional law." *Ayers v. Pocono Mtn. Sch. Dist.*, 710 F.3d 99, 114 (3d Cir.) (quotation marks, citation omitted). Defendants can hardly invoke "national security," when neither the Executive Order nor regulations articulate any concrete threat, nor can they oppose emergency relief when they have themselves delayed the regulations. Mot. 14.[4]

Defendants claim any injunction should not be nationwide but offer no alternative that would afford Plaintiffs complete relief. *See Pennsylvania v. Trump*, 351 F. Supp. 3d 791 (E.D. Pa.), *aff'd*, 930 F.3d 543 (3d Cir. 2019), *as amended* (July 18, 2019), *and rev'd and remanded sub nom. Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. ___, 140 S. Ct. 2367 (2020). Nor can they: TikTok is a mobile application that serves users across the country—users that view Plaintiffs' content and create content that Plaintiffs view. The Court should enter a nationwide injunction.

Finally, the Court should decline to impose a bond, as that would impose a hardship on Plaintiffs, Plaintiffs' seek to enforce important constitutional rights, and there is no risk of monetary harm to Defendants. *See Temple Univ. v. White*, 941 F.2d 201, 219 (3d Cir. 1991) *Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 209-10 (3d Cir. 1990).

### III. CONCLUSION

For these reasons, Plaintiffs respectfully ask the Court to enter an order temporarily and preliminarily enjoining enforcement of the Executive Order and regulations.

---

[4] None of the cases Defendants cite, Opp. at 27-28, are analogous. *Defense Distrib. v. U.S. Dep't of State*, 838 F.3d 451, 455 (5th Cir. 2016), declined to enjoin regulations prohibiting plaintiffs from sharing online 3-D printing files that allow users "to produce fully functional, unserialized, and untraceable metal AR-15 lower receivers," relying heavily on conclusion that the preliminary injunction would effectively be permanent. The remaining cases do not weigh national security interests against individuals' constitutional rights. *See, e.g., Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 25-26 (2008) (threats to the safety of Navy fleet without disputed training outweighed concerns in protecting marine habitat).

Respectfully submitted,

Dated: September 25, 2020        HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

 */s/ Bonnie M. Hoffman*
Bonnie M. Hoffman (PA Bar # 201140)
Jason A. Levine (PA Bar # 306446)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Phone: (215) 568-6200
Fax: (215) 568-0300
Email: bhoffman@hangley.com
      jlevine@hangley.com


DAVIS WRIGHT TREMAINE  LLP

Ambika K. Doran (admitted *pro hac vice*)
920 5th Avenue, Suite 3300
Seattle, WA 98104
Phone: (206) 622-3150
Fax: (206) 757-7700
Email: ambikadoran@dwt.com

Diana Palacios (admitted *pro hac vice*)
Heather F. Canner (admitted *pro hac vice*)
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017
Phone: (213) 633-6800
Fax: (213) 633-6899
Email: dianapalacios@dwt.com
      heathercanner@dwt.com


Robert Corn-Revere (admitted *pro hac vice*)
1301 K Street NW, Suite 500 East
Washington D.C. 20005
202-973-4200
Email: bobcornrevere@dwt.com

*Counsel for Plaintiffs Douglas Marland,*
*Cosette Rinab, and Alec Chambers*